Angel De Leon v. Holder. Good morning, Your Honors. Good morning. May it please the Court, I am privileged to represent Mr. Oscar Angel De Leon before you today. This case is about impermissible statutory construction as applied to the factual finding made by the immigration judge and upheld by the Board of Immigration Appeals, specifically the interpretation of the term apprehended at the time of entry as set forth in the eligibility requirements for Nicara relief. This is a question of law, and this honorable court has jurisdiction over this matter and the power to review the lower court's holdings de novo. The facts, as determined by the immigration judge and upheld by the board, are undisputed, and the evidence upon which the immigration judge and the board relied shows conclusively that Mr. Angel De Leon was not apprehended at the time of entry, but rather at some time after his entry, that is at milepost 9 of Aravaca Road East. Which the record says is 25 miles. The record says it's within 25 miles of the border. That is the construction that the immigration judge gave it in her decision. Agent Huffman, the one who arrested the petitioner, says that the milepost 17, which is where he arrested the petitioner, is within 23 miles of the U.S. border. Milepost 17 and milepost 9 are counted from where? Where's milepost 0? It's not clear from the record, your honor, and the maps that were submitted in the record in the immigration court proceedings are not clear on where milepost 0 is. But milepost 0 is not the border. It's clear. If milepost 17 is 23 miles from the border, 0 is not the border. So we don't know where they're counting from. Usually, I'm accustomed to these mileposts on the interstates around here, and they count from state lines usually, but that's not the case here. It does not appear to be so, your honor. What is clear is that there is no evidence in the record that Mr. Angel de Leon was observed immediately during or immediately after his entry into the United States. To find that he was apprehended at the time of his entry when actually he was not observed until milepost 9 is an arbitrary and unreasonable application of the law. Sorry, go ahead. Who has the burden of proof here? The alien always has the burden of proving eligibility for the relief requested. And I take it you're taking issue with the BIA definition of entry that requires freedom from official constraint? We are not taking issue with the idea of requiring proof of freedom from official restraint. There is a criticism that we have that freedom from restraint as a general concept also includes freedom from surveillance unbeknownst to the alien. In this case, the only party that would have evidence of surveillance unbeknownst to the alien would be the government. But the only evidence that the government has presented is that Mr. Angel de Leon was not observed until milepost 9 of Aravaca Road. Therefore, the government's evidence has met the petitioner's burden. So in other words, you accept this BIA policy that official restraint may take the form of surveillance unbeknownst to the alien? We do accept it, Your Honor. But accepting that, you say, well, if it's unknown to the alien, then and the government says that they observed unbeknownst to the alien at the point of entry, they have some obligation to tell you when that was or who did it, who observed. Yes, Your Honor, if the government is the evidence that they've come up with is how close do they have to the border? Someone saying that they saw your client. According to Agent Huffman, the arresting Border Patrol agent, he was in his service vehicle around milepost 9 when the truck containing Mr. Angel de Leon passed by and he was able to observe it. Milepost 9 from the border. It is unclear how far milepost 9 is from the border from the record. Google map up and look at my. I actually do have a Google map that I printed up for myself, Your Honor. It is not a map that was included in the record. That's a matter of public record. Well, we don't have to have a record. We don't have to have it in the record of this case. Is it northbound? Is milepost 9 closer to the border than milepost 17? I believe that Aravaca Road East goes roughly parallel to the border. So milepost 9 and milepost 17 could be equidistant from the border. Yes, Your Honor. They could be. But you said milepost 17 was 23 miles from the border. So milepost 9 may be 23 miles from the border. Yes, Your Honor. It's not necessarily 8 miles closer then. Yes, Your Honor. I'm looking. So the vehicle wasn't moving away from the border. Is that what you're saying? The vehicle was certainly not going towards the border. Right. And if Mr. Angel de Leon's purpose was to be in a truck to take him back to his home in the United States, it was not going towards the border, Your Honor. No, but it wasn't necessarily going away from the border. It could be going parallel to the border, as I understand your submission. Yes, Your Honor. You looked at your Google map? Yes, I have it. And according to Google Maps, to walk from the border to mile marker 9 would take 17 miles. How many? 17. 17 miles from the border to milepost 9. Yes, Your Honor. Could I clarify, too? You acknowledge that the alien always has the burden of proof as to freedom from official constraint. Identify for me the facts that you say meet that burden. The fact is that the government did not observe Mr. Angel de Leon until milepost 9. There's no evidence in the record that any government agent observed him prior to that time. Is there any evidence that would indicate how long he had been in the United States? Mr. Angel de Leon... At the time he was observed. At the time he was observed. I'm sorry, is there any evidence to indicate that he was in the United States at the time he was observed? He was observed at milepost 9. Yes, Your Honor. Is it established that he had crossed the border? Or had he been here for 10 years? He admitted to crossing the border. He admitted to crossing the border. Yes, Your Honor. All right. And he admitted to crossing the border and going directly to milepost 9? Yes, Your Honor. I thought previously there was a whole thing about... There was a whole other story that's now gone. There was some testimony about what happened to him after he was picked up. Where he was taken, where he was processed, who processed him. I see, but it's not before. You haven't changed the story about what happened before he was picked up? We are not changing the story that he told at this point. There were some changes in his recitation of his history on that day. But those facts are not the facts upon which the immigration judge and the board relied. They relied only on Agent Huffman's report, and the form I-166C, and the accompanying letter that he wrote to a government trial counsel during the time of the immigration judge proceeding. Can you understand why I'm having a little bit of difficulty? What you tell me is the aliens... Mr. DeLeon, he carries his burden by saying that the government hasn't met its burden. No, Your Honor. What we are saying is that the evidence introduced by the government, the only credible evidence upon which the immigration judge relied, establishes clearly that he was not observed before mile marker 9. How does it establish that he wasn't observed? It establishes it because it's the only evidence in the record. No, it establishes where he was observed. How can it establish where he wasn't observed? How does it show the negative? And that seems to be what you're relying on to meet the burden. Yes, Your Honor. And all I saw is that there's evidence where he was observed. Yes, Your Honor. Okay. Your Honor, respectfully, I don't know how it's possible to prove that that somebody was not observed by a government agency prior to the evidence that was entered into the record. Right, but it just all goes back to the burden of proof. What about freedom? What about, I think it's matter of G that talks about freedom? Yes, Your Honor. To go up to go at large and mix with the population. Yes, Your Honor. Do you accept that standard? I accept that standard, but I am suggesting that matter of G does not apply in this case. Matter of G applies when the facts are not clear. And what we're saying is that the facts are clear. The facts are clear. The government did not observe Mr. Angel DeLeon prior to milepost 9. And what do we make of the fact that the IJ found Mr. DeLeon not to be credible and that that's not contested? That is not contested. The only thing that the immigration judge relied on was the report from Agent Huffman. That is the factual finding. We are relying on that. And respectfully, this honorable court, I don't believe has jurisdiction over factual findings. My question, I wasn't speaking in terms of challenging factual findings. I was just speaking in terms of the quandary that I'm having with parsing the burden of proof. Well, Your Honor, if I may try to provide an illustration. Suppose Nelson Mandela made his way out of decades of confinement and somehow made it to the United States with only the shirt on his back. No newspapers, no birth certificate, nothing. And he applied for asylum here in the United States. There's plenty of newspaper articles, plenty of press about how he was held in confinement for his political opinion. He would still qualify for asylum, even though he's not the one that's presenting that evidence. The government has made Mr. Angel DeLeon's case for him. Can you tell me where I can find in the record? I can't find it right this minute. The immigration authority person's statement about the number of when he first spied.  At page 1181 is the form G166C, and at 1183 is a follow up letter from Agent Huffman dated June 3, 2010. Was the agent ever questioned? The agent was not brought in for in-person testimony, Your Honor. So the government could have called the agent for testimony? Yes, Your Honor. And Mr. DeLeon could have called the agent for testimony again? Yes, Your Honor. So is this a case where we should remain and see what the agent says when directly asked the question, when did you first? Your Honor, any in-person testimony by Agent Huffman would necessarily rely on the report that he wrote 11 years ago. I understand that, but the report, as far as I can tell you, what you're saying is incomplete. No, Your Honor. It doesn't say I did not observe him until X date, or I did observe him from the outset. It says neither. Maybe he'd come in and he'd say, you know, I just don't remember. Then we'd be left with another, because after all, it was 11 years ago. But I've read this, even though I couldn't find it today, I have read it a couple of times, and I think I'm correct that it does not say inclusively one way or the other. Well, respectfully, Your Honor, I think it's clear. It says, on July 30, 2003, while assigned to line watch duties in the Arivaca, Arizona area, I observed an older model Ford pickup truck pass my service vehicle on Arivaca Road East at approximately mile post 9. And you're saying that's the point he was first observed? Yes, Your Honor. All right. And there is no other point. I mean, there's no conflict in the record about some other person observing him some other time. No, Your Honor. And how long had he been in the United States at that point? He had been in the United States since 1988, Your Honor. No, but that— Oh, on that day, Your Honor? You're right. Possibly several hours. Well, but the BIA says it's unclear at what point he actually entered, how much time had passed before he was spotted by Agent Huffman, and how far from the border he had traveled before he was detained. That's what the BIA says. What are we supposed to make of that? Well, Your Honor, I think that that is— They're saying they don't know. Well, yes, Your Honor, and the government not being able to— And they don't believe your client. You say we've got to believe your client. They're saying they don't believe your client. They don't know how long he'd been here. But if we believe just the government, Your Honor, as the— All right. If we believe just the government's report as the— I'm talking about the BIA. Yes, Your Honor. That's what's on appeal here. Yes, Your Honor. Well, both decisions are on appeal here. But that language comes from Matter of G, and Matter of G applies when the facts are not clear, and we're suggesting that the facts here are clear, that according to the government's own evidence— Then what do we make of the fact that the BIA says they don't know, that they're unclear? Matter of fact, they say it—they use the word unclear. Yes, Your Honor. I understand what the BIA is saying, and— I guess you would claim that that's an acknowledgment. Yes. That they didn't see him. They don't know when he came in. It's unclear. Yes, Your Honor. So that the first time they did see him is the time that they said. Yes, Your Honor. Thank you. And that also covers the— Lacking the freedom to go at large and mix with the population. Yes, Your Honor. He was free to go at large and mix with the population from the time that he entered the United States until Milepost 9. And you're relying on what specifically for that? The report from Agent Huffman. That he saw him at Milepost 9? Yes, Your Honor. So we're making assumptions both about where he was first seen and what he was doing before he was first seen. Yes, Your Honor. He had to get to Milepost 9 to be seen. And he was in the truck, right? Yes, Your Honor. There's no suggestion that he flew there. No, Your Honor. But you said he walked. He walked across the border and then he—  Yes, he walked across the border and then he got into a truck. That he rode from the border to this Milepost 9? He rode from some point after the border to Milepost 9. Well, how far from the border was it that he got in the truck? It's unclear, Your Honor. It's unclear. Well, then the BIA says it's unclear. Everything's unclear. Everything— Except that they saw him at Milepost 9. Yes, Your Honor. I don't know how long he was in the country before that. Because what the BIA opinion that's on appeal says, or you're petitioning for appeal, says they don't know how long he'd even been in the country. Yes, Your Honor. The way it says it, he could have been here for a month or a year. Yes, Your Honor. You say he was only here for a little while. Yes, Your Honor. But they say they don't know. Yes, Your Honor. They're supposed to be the experts. They don't know. There's case law that refers to somebody being in the United States for 30 minutes. That's matter of Z from the Board of Immigration Appeals. There's case law in the Second Circuit under Cheng that refers to four-tenths of a mile. There's NIRENDA in the Eighth Circuit that refers to two miles. It doesn't have to be anything but a brief period of time or a brief distance in order to count as an entry. So you'd have a harder case if he stopped as he walks across the border and then, I don't know, 100 yards away, they pick him up. It would be more difficult, yes. The question would probably revolve around when he was observed. And, of course, the government has all the cards there because they have the witness that says when they observed the person. Yes, Your Honor. And we would suggest that that's conclusive. But he had walked and ridden at least 17 miles. According to the way I read the Google map, yes, Your Honor. And I do have, I made three copies. For some unknown period of time. Yes, Your Honor. Okay. I think we understand your argument. Maybe we'll let the government hear what the government has to say. Yes, Your Honor. Thank you. Good morning. May it please the Court. My name is Jeffrey Liest. I'm appearing on behalf of the Attorney General. The government's position is that the court lacks jurisdiction to entertain the petitioner's factual challenge to the Board's decision here. The petitioner's challenge essentially is that the evidence which he submitted  However, under ARBIRA Section 309C2, such determinations are not subject to review. Anything that, in terms of the requirements for ARBIRA, whether or not you enter before a certain date, whether you apply for relief by a certain date, whether you, as is relevant in this case, were apprehended on your entry at a certain date is not subject to review. How come there are all these appellate and other decisions about it then? Those cases don't involve NACARA. The cases that are mostly relied on are cases where an alien is seeking to prove they have an entry. What you're saying is we have to take the facts the way you all lay them out. It's not subject to review. Pardon? The facts aren't subject to review. The law is subject to review. Correct. Constitutional issues are subject to review. Right, but that's not presented here. This is simply a challenge to the facts. What facts do we take here? What do you mean? Well, when did he come across the Board? That's an excellent question, Your Honor. Oh, it is an excellent question. I'm talking about on the basis of this record. What's the government's position on when he got across the border? That directly relates to the Adverse Credibility Fund. What? That directly relates to the Adverse Credibility Fund. All right, it does. According to the petitioner, he entered 11 days earlier and was stopped at the border and was put in detention. Well, what's the government's position on we take the facts the way you all found them, the BIA and the ALJ or whatever, or IJ, we take those facts, you say, but I just read to your colleague here, the BIA says it's unclear, unclear, at what point the respondent actually entered. It's unclear how much time passed before he was spotted by Agent Huffman, and it was unclear, is unclear, how far from the border he traveled before he was being detained. So is that wrong? No, I think that's the board's point, is that it's simply on this record we don't know. No, is that, is that, those facts incorrect? No, I think that is correct, Your Honor. So there's, so we don't know when he came across the border. And that's the alien's burden. I think that's the board's concern. And we don't know how long he'd been there. We know that he had been, he was at milepost 17 is all we know. Right. So he could have been, come across the border a month earlier. That's the whole point, Your Honor, is we simply don't know. Is that right or wrong? That's entirely possible. All right. And according to the petitioner's testimony, which he maintained throughout entire proceedings. But he came across a month earlier. It's hard to say that you apprehended him on the internet. But I think that also ties into the credibility finding, is that the petitioner's, throughout his proceedings, said that he had entered 11 days earlier, was apprehended at the border, was actually in detention at this point in time on July 30th, which is the date when Officer Huffman's document comes into play. So we simply do not know. There's no credible testimony saying, yes, I entered on July 30th. I walked 17 miles to milepost 9, got in a truck, all of that. If that was the situation, the case may have turned out differently. But because the alien has the burden, the board doesn't know what to believe here. The board doesn't have enough information on which to base its decision because we don't know when the petitioner entered. We don't know if he was apprehended at that point in time, as he said. We don't know if he was in detention at this point in time. We don't know any of these factors because there's been no credible testimony on that fact. The petitioner did not just simply appear on milepost 9. Something happened between A and B, and the board is concerned about that. Because the board says, if we don't know what happened between A and B. Was he apprehended at the time of entry? That's the question, is that we don't know. Well, what's your answer? But he has to be apprehended at the time of entry for this to all work out for you, right? Right. So you can't just say we don't know. We don't know if he was subject to restraint at that point in time, under the constructive restraint. So we don't know what happened. But we know that restraint can be a government agent looking at him. Correct. But there is no government agent saying, I looked at him at the point of entry. Correct, Your Honor. But we also don't know, because of the adverse credibility finding, if any of this is even believable. We just don't know. And that's what the board is striving for here, is that in the absence of any clear evidence to support this, we simply do not know enough information to make this determination. And when you don't know, it has to devolve to the burden of proof. Correct, Your Honor. I think that as a matter of course, is that when we see these kind of cases, if there's a clear story, that's going to be sufficient usually. But when there's not a clear story, and this was a matter of gee, is that it goes to the alien to demonstrate that they've made the entry. Matter of gee, there were some aliens, this was the Golden Venture case where a ship was capsizing, people were coming on to United States soil. And there were some people where it was very clear from the record. They had gotten to a certain point, there was no surveillance at that point in time, that was sufficient. Other aliens, and that was the alien whose case was a matter of gee, it wasn't clear. It wasn't clear when he had come in, how long he had been there, how far he had gotten to the border. So that was the issue, and the burden fell on the alien in that case. That's what the board is saying. Do you have where someone is more than 10 miles from the border, and that's the first time that the government says that they spotted them? I haven't seen. So what cases like this? I haven't seen any cases like that. No, I haven't either. I think that goes to what I was saying is that when the facts are pretty clear, when there's no issue regarding credibility, no issue regarding the initial entry, that the cases usually don't revolve around that issue. So it's usually not decided or it simply doesn't need to be reached. This case is different because of the credibility finding. We simply do not know enough information for the board to make its decision. You keep talking about the credibility finding, but for purposes of this appeal, he's accepting. He's not making any contrary claims. He's not putting his credibility at issue. He's accepting the government's testimony and the government's theory, and accepting that he's, what, more than 10 miles from the border? It's possible, Your Honor, but the board says it's the facts. Accepting that he's 17 miles from the border, right? It's at milepost 9. I believe the math that I have is consistent. Well, you're the lawyer here. You're the only one who can speak to this. But then the evidence that talks about milepost 9, and she says the evidence, and I recall it being, they said 17 miles from the border. So you're saying he was apprehended under the facts here. We give you the facts. Apprehended 17 miles from the border. That's when he was seen. And he was actually taken physical custody 25 miles from the border. Right? Yes. 23 miles, maybe. And you say that's at the time of entry. That we don't know the details up until that point. That's what the board's focusing on. I thought it had to be apprehended at the time of entry. Correct. All right. So the 17 miles when he's first seen, and he's apprehended at that point. He's seen by Officer Huffman. And he's apprehended at the 17 mile point. And you say, as a matter of law, that's the time of entry. I believe that the board's position on this is that it's a continuing process. No, but we can only start to process at 17 miles because that's the first time anybody saw him. Right. And I think that's the board's problem here is that we don't know what happened up until that point. If you concede that's the first time somebody saw him, it seems to me this case is over. Well, that's of the evidence that we have. But that doesn't instill as the burden prior to that. Indeed, that is the evidence we have. All we have is the evidence we have. Show us something else. I mean, he gave an explanation that's been rejected. Correct. You said corporate credibility finding. I thought you'd probably be better off with that, the way I read the law. Because you've got to say he was apprehended at the time of entry. And that was at 17 miles from the border when he was first seen. Right. So that's your best case, is that he was 17 miles, he was apprehended at 17 mile point, and that's the time of entry. That's the way you, the BIA, the Attorney General, the immigration authorities, that's the way you all interpret the law. Is that correct? In terms of? The point of entry was 17 miles. That's the point of apprehension. No. Well, I guess I'm confused. No, because he's not apprehended until later. Right. He was first seen 17 miles, right? Correct. I don't think the board really addressed this spot on, Your Honor. I mean, the immigration judge. But that's got to be the law, as you all interpreted it, that he was apprehended when he was first seen. Well, because the. And that was the time of entry. I think that the. And we can review errors of law. We can't review asserted errors of fact. We've got to take your facts. I'm trying to give you your facts. Correct, Your Honor. You say you don't know what the facts are, but I'm trying to give them to you. Right. And if I'm giving them to you wrong, this is your chance to straighten me out, straighten us out, because we have to give you your facts. And it seems to me that your facts are he was apprehended at the 17 mile point. Correct. Okay. But I think. And that is the, under the law, the entry. Unless the alien. So the entry was 17 miles from the border. Unless the entry, unless the alien was subjected to. Your point in this case is the entry was 17 miles from the border when he was first seen. And that constitutes an entry. That's the entry. And so that. As a matter of law. Could I just clarify, because it's been clear to me. I thought that the question is apprehension and entry aren't exactly the same thing. That entry is defined as freedom from official constraint, which could have been when he was spotted. Correct. And apprehension may or may not be at that time, but it could be later on. Isn't that, I mean, that's not identical. I think that's what the board is getting to with its discussion of restraint. Is that because they don't know what happened up until he was. I'm giving you that. Right. Well. I'm giving you that fact that 17 miles when you saw him. Right. He's not under restraint then. He's just under your visual restraint. But that's the. But that counts as entry. Right. The board's decision is focused on what happens before that point. And the question just seems to me, as a matter of law, is the entry at the 17 mile point. As a matter of law, can the entry be 17 miles from the border? I mean, it can be at an airport. So, I mean, it can be beyond the actual physical border. The immigration. How far? How far? What if he'd first been seen in Nevada? 200 miles from the border. Would that have been the entry to it? Maybe that's right, too. What's the Department of Justice say that entry means? Is it limited to 100 yards? Is it limited to 17 miles? Is this as far as you're ever going to go? Is it limited to 170 miles? I mean, what is it? Well, I mean, the board hasn't spoken to the issue of how far an alien can get into the United States before it counts. A lot of these cases have. Yeah, but that's been a different issue as opposed to, like, the freedom from restraint from Nicara. Well, can I take – I mean, just can I – a lot of things are getting said, but restraint can take the form of just visual surveillance. Right. Regardless of whether the alien is aware of it. Right. So it doesn't have to be physical restraint. Right. And I give you that. He was restrained at 17 mile point. When he was seen. Sure, sure. All right. But in terms of the issue of whether – Oh, yes, by all means. Well, I just thought that you began to, and in your briefs, sort of distinguish – remember you were about to tell us that these other cases that he relies on are a different context, and they certainly are, but it seems to me that the government must be consistent through both contexts, not just when it's going to assist the government's position, but when it would also assist the aliens. They must have some consistent position. Correct. And I must say, I think the government has not done that. When it suits them, they look at this one way. And when it doesn't suit them, they look at it a different way. I mean, it's come down on both ways, Your Honor. There are cases where an alien – there's a case in the 11th Circuit where an alien was flying a plane in here, and he tried to say that he may have been under radar and that was not sufficient. Other cases it has been, and there's a 9th Circuit case where the alien was 50 yards in the United States. The 3rd Circuit has said that there should be some wiggle room, that it shouldn't be just one toe on the line and you're in. I think that's probably the more appropriate route, but the board in this case didn't actually adopt the immigration judge's finding, which actually dealt with that issue of whether or not there's kind of a constructive border or something of that nature, where the border is more than just the line in the sand, so to speak, and it could be beyond that period of time. But the board didn't adopt that. The board went the route that it did, discussing the restraint and the fact that we don't know what happened up until the point on mile marker 9. But if you all say the border's 17 miles wide – You don't say that. I don't think the board's saying that. You're not saying it's 17. No, the board's not saying that, you know, that this is the starting point. The board is concerned here because while we know that the alien was spotted for the first time at mile marker 17 and that because we have this credibility finding, we don't know what happened up until that point. We don't know if he entered that day. We don't know if he went straight from, you know, the border to this point. We don't know if he was spotted by somebody else. We don't know all these different areas. If we give you the facts, give you the benefit of the facts, what are they? That he came straight from the border to 17-mile point, or that he'd been there a couple weeks and finally wandered up to the 17-mile point? Well, I mean, that's the problem is that we don't know. Or he went to Phoenix and then drove back to the 17-mile point. What's the best case for the facts? We have to look at the facts in your favor. What's your best version of it on this record? On this record? I mean, I think we can't just ignore the credibility finding, though. I thought you did. I thought we were for purposes of this. We've totally ignored it. We accept the government's version. Right, but this is just that slice of time. So we don't know what happened before that. So then that's the board's position on this. The only thing we know is that he was first spotted 17 miles. According to the record, yes. Okay. Now, if he was first spotted 100 miles from the border, would you be making the same position, same argument? If there was the credibility finding, probably, yes, Your Honor. But there's nothing about the credibility finding. We accept the government. The government says, I first spotted him 100 miles from the border. And he says, oh, no, you didn't. I was in Santa Fe. I was in New York. You didn't spot me at all. And the board rejects that, and we reject that. That's a credibility finding. We accept the government's version. So he was 100 miles from the border. I would probably say no, but I don't know, Your Honor. You'd probably say no what? That that would probably not be the same argument that's being made here. Okay, so that wouldn't be upon entry. So it's somewhere between 17 miles and 100 miles that there is a point of entry. Is that it? From the border? How are we to discern that? 17 miles seems quite far from the border. Agreed, Your Honor. And I think that if we had a consistent story of how we got there, that this case would have turned out differently. But we're left with the record we have. We're left with the board decision we have, and that's... And we're left with the burden of proof. Correct. I think that's what the board was concerned with, is that we simply don't know what happened between A and B. And it's very possible that it could have been a B line from the border. Well, which version is best for you? I mean, the best version would be... B line from the border? I mean, it's tough to say, Your Honor, because I don't know... Well, assume we're going to give it to you. What's your best version? I think the shorter amount of time, the better. The shorter amount of time, that he came across the border, and he jumped on the truck, and he drove to the 17-mile point. I mean, I think that... He went 100 miles an hour. I mean, would that be better than if he had spent three weeks traveling around on a... Wandering the hillsides to get to the 17-mile point. Right. But, I mean, the board doesn't really focus on that, so I don't really know how to answer the question. But we have to give you the facts. You got up here, and the first thing you said is, we can't contest the facts. Let me tell you, we know that. We're talking about a legal issue of what entry means. Correct. And we give you the facts. But it seems to me like you don't know... You're not willing to tell us what your version of the facts is. That's because I don't know, Your Honor. Well, we'll give you the best one you can come up with, inferred from what the circumstances that we know. He was 17 miles. We know where the borderline is. You say it's not 17 miles wide. There is a border between Mexico and the United States. And he was found, or observed, taken into custody at the time he was observed, apprehended 17 miles away from that border. What's your best version? Is there anything more than that? Not that I can think of, Your Honor. Well, actually, you don't even have to concede that he was first observed at milepost 9. I mean, he could have been observed earlier by someone, and that would have been a part of Mr. de Leon's meeting of his burden of proof. Correct. But you did concede several times earlier in this argument that he was first observed. According to the record, but we don't know if there's anything besides that. Well, there's the record. Right, but the alien still has the burden of production. He was observed by the government. Correct. But if the government concedes that he was first observed at milepost 17, then that's the record. Well, that's the document that the board relies on for that issue, but there still is... And you said that that's when he was first observed. That's when he was first observed by the government. The question is, what happened before that which devolves back to Mr. de Leon's burden, not the government's burden. Right, the first incident of being observed is at mile marker 9. Whether or not there was something before that, the alien has the burden... There's nothing in the record about anything before that. Right. Except that's 17 miles from the border. Right. We know those are hard facts. Right. And you can't infer from that that he was seen somewhere else. You can infer from that that he came directly maybe from the border to that point. But I don't think that the board's inferring that there was something else, but it's placing the burden on the petitioner to actually demonstrate that. No, the board was relying on the fact that he was observed for the first time at the mile thing 9, right? And then he was apprehended later. But the board doesn't know what happened before then, and the board isn't the one that has to prove where he was. Right, I think that's the board's point here is that on the evidence we have in the record, this is the first incident. The alien has the burden of proving not just that incident, but everything up until that point. So if the alien tells a consistent story and says, you know, I crossed the border at, you know, wherever, made a beeline there. These things sound incredible. Right, but that's the... So we can't deal with that. We have to deal with the hard facts here and give you the best version, the best version of the facts and the reasonable inferences. Isn't what usually happens when it is impossible to tell the party what the burden of proof loses? Right. Isn't that how our system usually works? Right. Unless the evidence with respect to a fact is solely within the power of the adverse party. I think there's a pretty good body of law that says that. And only the adverse party here, the government, would be able to say when he was first observed. Why would that be if he could have met someone who could have testified where he was between point, between entry? But I thought it would have, if the category is first observed by the government, to get within this entry. It could be, yes, Your Honor. But it's also, I mean, I think that to Judge Duncan's point is that the alien here has the burden of, and I think that it's not necessarily the difficulty of a burden. I think in a matter of practice is that if there is no issue with credibility, there is no issue with any adverse facts, if an alien says, I crossed the border, made it straight to mile marker 9, the board's probably going to be like, all right, absent any issue about that, that will be sufficient. But when there is an adverse credibility, when the issue of when and where and how and for how long he had been in the United States is at issue, that's a different issue. Okay, but the observation has to be by a government because that means you're under the government control. Isn't that right? The first observation. There's case law on that that if it's like in the situation of a ship and the captain of the ship doesn't let you leave the confines of the boat, that that constitutes restraint. There have been cases. I can't think of them off the top of my head. No, but I'm talking about the, okay, I guess I can look it up, but you're telling me anybody observing him counts. Is that correct? I think it's got to be some kind of unique circumstance, but generally speaking, it is going to be the government. I thought it had to be because you had to have the show of authority and therefore it had to be the government that was doing the observing. Right, so generally speaking, unless there is some other kind of circumstance with another entity, I can't think of one off the top of my head, but there has been. But it would be, okay, so in order for him to be seen, he would have had to have been seen in some official capacity. Is that the answer to the question? By some official. Or by someone in a law enforcement or quasi-official capacity. I believe so. If I had seen him, I'm not sure if that would be sufficient to count as him under being. If he what? If I had been the one to see him, if I'm just walking across the street and I see him, I don't think that's sufficient. So I think it has to be somebody of some kind of authority. Whether or not it has to be a government official in that kind of context of the border patrol, I don't know. I don't know if police are sufficient. With official restraint. Right. So I think it. If the deputy sheriff did it, maybe if it was the deputy sheriff, it would be all right. I think so. How about that? I think we understand your argument. Thank you very much. Thank you. Do you have any rebuttal? Your Honor is. In all this discussion, I'm not sure how much more to add, except to say that logically, if the government doesn't know how and when Mr. Angel de Leon entered the United States, then he could not have been observed. And if he could not have been observed, he could not have been under official restraint, either actual or official. Or constructive. And to the point of Mr. Angel de Leon's burden of proving he was not under surveillance, unbeknownst to him. I would say again, how can he prove a negative when all the evidence of that negative is in the hands of the government? And what the government has given us is a report from Agent Huffman. And that's it. We do not contest that report. We rely on that report as the immigration judge did and as the Board of Immigration Appeals did. Your Honor, this case involves a simple issue of the incorrect interpretation and application of the law with respect to the statutory term apprehended at the time of entry to the facts in this matter. We plead with this honorable court to grant relief and hold that the immigration judge and Board of Immigration Appeals hear it as a matter of law. Thank you very much. Thank you. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Robert B. King, Allyson K. Duncan